## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DOUGLAS CHERRY, DR. LANCE DYESS, IRA EDMONDSON, JIMMY JONES, RACHEL MCKINNEY, LINDA MIDDLETON, and VICTOR STAFFORD, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 1:07-CV-923-MEF |
| AIG SUN AMERICAL LIFE ASSURNACE COMPANY, f/k/a ANCHOR NATIONAL LIFE INSURANCE COMPANY, AXA EQUITABLE LIFE INSURANCE COMPLANY, f/k/a THE EQUTIABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, AXA DISTRIBUTORS, LLC, f/k/a EQUITABLE DISTRIBUTORS, LLC., KEMPER INVESTORS LIFE INSURANCE COMPANY, HARTFORD LIFE INSURANCE COMPANY, and MAXINE CHAPPELL, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### PLAINTIFFS' NOTICE OF FILING EVIDENTIARY SUBMISSION
### IN SUPORT OF PLAINTIFFS' MOTION TO REMAND

COME NOW the Plaintiffs, Douglas Cherry, Dr. Lance Dyess, Ira Edmondson, Jimmy Jones, Rachel McKinney, Linda Middleton and Victor Stafford, by and through their undersigned counsel, and hereby give notice of filing the following evidentiary materials in support of their Motion to Remand:

**EXHIBIT A**    "Full statement by Maxine Chappell" that ran in the Dothan Eagle Newspaper Friday, November 3, 2006

| | |
|---|---|
| **EXHIBIT B** | Spreadsheet that was presented to the arbitration panel outlining damages for the Plaintiffs in 2006 *Cherry* Arbitration Hearing |
| **EXHIBIT C** | Complaint filed by Ann Holman, et al., filed in the Circuit Court of Houston County, Alabama |

Date:   November 8, 2007.

Respectfully submitted,


s/ Peter H. Burke
Peter H. Burke (AST 1995-k74p)
Richard S. Frankowski (ASB-1734-h70f)
*Attorneys for Plaintiffs*


**OF COUNSEL:**
**BURKE HARVEY & FRANKOWSKI, LLC**
One Highland Place
2151 Highland Avenue
Suite 120
Birmingham, AL 35205
Tel:  205-930-9091
Fax:  205-930-9054
pburke@bhflegal.com
rfrankowski@bhflegal.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the following listed persons via electronic filing using the Court's PACER system, and by placing a copy of same in the U.S. mail, first class postage prepaid and properly addressed on this the 8th day of November, 2007, as follows:

Andrea Morgan Greene
John N. Bolus
A.Inge Seldon
Maynard Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203-2602
205-254-1000
Fax: 205-254-1999
*Attorneys for Defendants AIG Sun America Life Assurance Co., AXA Equitable Life Insurance Co., AXA Distributors, LLC, Kemper Investors Life Insurance Co., and Hartford Life Insurance Co.*

Thomas E. Baddley, Jr.
Baddley & Mauro, LLC
2545 Highland Avenue
Suite 201
Birmingham, AL 35205
*Attorney for Defendant Maxine Chappell*

s/ Peter H. Burke
OF COUNSEL

3

Friday, November 3, 2006 • DOTHAN EAGLE • 3A

# Invest

continued from 1A

The NASD ruled Raymond James was liable for "breach of fiduciary duty, breach of contract, common law fraud, negligence, negligent misrepresentation/omission, failure to supervise and control and violation of federal and state securities laws and NASD Rules of Fair Practice."

A variable annuity is basically a contract between the investor and an insurance company, in which the investor agrees to make periodic payments to the investor, either immediately or beginning at some future date. They can be bought with a lump sum or a series of payments.

Financial professionals have a duty to advise the investor if the investment product (the annuity) is suitable to the investor's particular needs.

In this case, the NASD ruled the investment was not appropriate for this group.

"These declinations often far outweigh any alleged benefits conferred upon the investor," Frankowski said. "As a result, the investor may end up losing their life savings — their nest egg — while the broker makes a huge commission."

A spokesperson for Raymond James and Associates said the company was not allowed to discuss the specifics of the ruling, but did

# Full statement by Maxine Chappell

I was not named in the claims against Raymond James & Associates and I disagree totally with the findings of the panel. This was not a court of law and the people who made the claims invested in the markets at the high end of the markets at the high and took a large percentage of money from the accounts on a monthly basis while the markets were declining, which accelerated their losses.

Each of the clients was advised to lower the distributions they were taking during this period of the bad markets but ignored the advice. It is my understanding from attorneys involved that clients from all local investment firms responded to advertisements placed by high audit scores.

Unfortunately, all investors were hurt by the economic slowdown beginning in 2000 and the subsequent events that resulted from 9/11 attacks as well as the corporate scandal. The clients that responded to the ads were clients who invested during this time with Raymond James through Chappell and (Ann) Holman.

And while brokers are paid a commission, it is not nearly as much as one-third or more of the awards that some attorneys charge clients to make claims for them.

Kathy Bustamante, director

dies requirements as well as NASD requirements. Market research shows that 62.2 billion dollars was invested in variable annuities in the second quarter of 2006, the highest quarter ever. As of March 2006, variable annuity investments totaled 847 billion dollars.

A review of our files by the NASD found no fault with any of these investments. Each investment placed by a Raymond James broker has to be approved by Raymond James Corporate Compliance before money can be invested. In addition Corporate compliance conducts an annual "unannounced audit" and this office maintained very high audit scores.

One such attorney from Birmingham placed ads across cities in the South that read, "Stock Market Losses? Call me." Less than 1/10 of one percent of the investors in this area responded to the ads; however some of the clients that did respond have never been clients of mine. In fact, I don't even know them; but Mr. Frankowski used my name in his claims anyway.

The variable annuity investments that clients were put in were suitable and had met all state securities

"We continue to believe

# Petition

continued from 1A

petition to Dothan's city clerk, the city clerk's office will verify that 2,400 of the signatures are from registered voters who live in the city. The city clerk will then present the petition to commissioners, who will schedule a referendum on the proposed change.

Should the change pass, an election will be held and each member of the commission would have to run to retain his seat. Otherwise, the terms of the current members will expire after a new commission is elected.

"There are lots of people who are eager to sign it," Everett said. "They want to hear the difference between the city manager form and the mayor-council form, and we want them to hear it and want the city — the elected officials — the high road and go ahead and set that election so we can start the debate."

Once Everett submits the

Volunteers will be at the nine polling sites in Dothan during the Nov. 7 general election. They will have to adhere to a 30-foot rule that applies to polling places. The petition drive will end when polls close at 7 p.m.

The petition drive began after city commissioners adopted an additional 1-percent sales tax in September. The tax goes into effect on Jan. 1. The petition chastised commissioners for passing the tax without a vote of the people.

The form of government, he said, wouldn't have changed the sales tax vote.

"It doesn't matter what form of government you have, it's the people that you have in those places," Thomas said.

Thomas said the petition is a barrier to progress at a time when the city is getting interest from outside companies.

"I think it's a black eye for the City of Dothan," Thomas said. "I think it effects the business climate of Dothan, and I think it's an anchor that's been thrown out to slow progress."

Everett said the city could have the referendum before the July 2007 municipal elections or time the referendum with that city election to cut costs. Residents, he said, deserve a constructive debate.

"Then let the people vote," Everett said. "I have always trusted the vote of the people. They may not get it right sometimes, but it's always right."

### Kenneth Everett
former Dothan mayor

Thomas said commissioners will operate under the law if a petition is brought to them.

REFRESH

Sunday, November 5, 2006

# Damages
## Compensatory

### Summary of Market Adjusted Losses

| | Out-of-Pocket Profit or Loss | Benchmark Allocation to Bonds | | | |
| | | 0% | 50% | 60% | 70% | 100% |
|---|---|---|---|---|---|---|
| Cherry | ($132,663) | ($128,002) | ($215,172) | ($232,606) | ($250,039) | ($302,341) |
| Dyess | ($56,803) | ($128,829) | ($193,201) | ($206,075) | ($218,950) | ($257,573) |
| Edmondson | ($156,505) | ($81,831) | ($182,434) | ($202,578) | ($222,703) | ($283,076) |
| Jones | ($43,477) | ($25,488) | ($70,601) | ($79,623) | ($88,646) | ($115,713) |
| McKinney | ($54,193) | ($41,360) | ($114,670) | ($129,332) | ($143,993) | ($187,979) |
| Middleton | ($61,555) | ($53,368) | ($96,555) | ($105,193) | ($113,830) | ($139,743) |
| Stafford | ($90,366) | ($69,054) | ($136,828) | ($150,383) | ($163,937) | ($204,602) |
| | ($595,562) | ($527,934) | ($1,009,480) | ($1,105,790) | ($1,202,099) | ($1,491,027) |

Copyright Whatley Drake & Kallas LLC, 2006

**Exhibit B**



N THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

JAMES P. ARANT, DORINE
BARRANCO, RHODA S. BOONE,
GAYLE S. BULLARD, GERALD C.
CAPUTO, MARJORIE L. CAPUTO,
PEGGY J. COLE, BEVERLY L. DAVIS,
JESSE D. DEAN, PHILIP M. DEASE,
JACQUELINE P. DRAUGHON, HOWARD R.
DUNN, HANS D. ERBSKORN, CHARLENE
B. ERBSKORN, CHARLES B. EMMETT,
KATHRYN M. FOSTER,
PEGGY SHANNON HALL, RABON W.
HARRISON, RUTH K. HARRISON,
JAMES H. HAUSMAN, DONALD W.
HENDLEY, EDWARD L. HINSON,
JEANETTE C. HINSON, ANN S. HOLMAN,
GAYLE O. HUDSON, PEGGY JUNE JOHNSON,
KENNETH W. JOYNER, JAMES R. LITTLE,
LINDA D. LITTLE, SARAH A. MARTIN,
EARL D. MATTHEWS, DORIS MATTHEWS,
SARAH MCCORD, FRANK MILLER, JERRY
MIMS, JO ANNE MERRITT, NINA SUE NEW,
DELLA M. PASS, HUGH A. ODOM, HAZEL J.
ODOM, JEANETTE K. PARKER, KEVIN M.
PATTON, MARY HARRIETT PATTON, JACK
R. PERRY, FREDDY QUATTLEBAUM,
BILLIE S. RIVENBARK, ROY W. SAUNDERS,
CAROLYN H. SAUNDERS, EARL T. SENN,
EDNA SENN, REUBEN S. SHELLEY,
JUNE K. SHELLEY, LINDA CHERI
KELLY-SHERER, ANITA CAROL SHIRAH,
TOMMY E. SMITH, DANNY L. SNELL, TONY
R. SPIVEY, LADONNA B. SPIVEY, FLOYD
STARLING, VIRGINIA A. STARLING, WILLA
C. STOREY, JEANETTE S. SUTHERLAND,
MARY E. TODD, GERALD F. TRAMMELL,
BETTY M. VANN, F. TERRY WALDEN,
SHIRLEY J. WALKER,

**Exhibit C**

DEBRA REBECCA WHITE,
ASHLEY HIATT WIGGINS, JAMES ZANDY
WILLIAMS, SANDRA WILLIAMS,
PHEOBIE D. WILSON, LYNDA
WIRTZFELD, CHARLES H. WOODHAM,

Plaintiffs,

v.                                                    CV 2007-___

AXA EQUITABLE LIFE INSURANCE COMPANY,
f/k/a THE EQUITABLE LIFE ASSURANCE
SOCIETY OF THE UNITED STATES, and AXA
DISTRIBUTORS, LLC, f/k/a
EQUITABLE DISTRIBUTORS, LLC,

## COMPLAINT

1.    Plaintiffs, Rhoda S. Boone, Peggy J. Cole, Beverly L. Davis, Jesse D.

Dean, Mary E. Todd, Betty M. Vann, Ashley Hiatt Wiggins, Linda Cheri Kelly-

Sherer, Anita Carol Shirah, Ann S. Holman, Willa C. Storey, Jeanette S.

Sutherland, Freddy Quattlebaum, Sarah McCord, Frank Miller, Jo Anne Merritt,

Nina Sue New, Kevin M. Patton, Mary Harriett Patton, Howard W. Dunn, Hans D.

Erbskorn, Charlene B. Erbskorn, Charles B. Emmett, Peggy Shannon Hall, Rabon

W. Harrison, Ruth K. Harrison, Peggy June Johnson, Kenneth W. Joyner, Sarah A.

Martin, Pheobie D. Wilson, Charles H. Woodham, Debra Rebecca White, James

Zandy Williams, Sandra Williams, and Della M. Pass, are individuals over the age

of nineteen (19) who reside in Houston County, Alabama.

2.     Plaintiffs, James P. Arrant, Shirley J. Walker, Floyd Starling, Virginia A. Starling, Jerry Mims, Donald W. Hendley, Gerald F. Trammell, F. Terry Walden, June K. Shelley, Reuben S. Shelley, Edward L. Hinson, Jeanette C. Hinson, and Kathryn M. Foster are individuals over the age of nineteen (19) who reside in Henry County, Alabama.

3.     Dorine Barranco, Tony R. Spivey, LaDonna B. Spivey, Billie S. Rivenbark, Earl D. Matthews, Doris Matthews, James H. Hausman, James R. Little, Linda D. Little, Gerald C. Caputo, Marjorie L. Caputo, Philip M. Dease, Earl T. Senn, and Edna Senn,  are individuals over the age of nineteen (19) who reside in Dale County, Alabama.

4.     Carolyn H. Saunders, Roy W. Saunders,  Jack R. Perry, Hugh A. Odom, and Hazel J. Odom, are individuals over the age of nineteen (19) who reside in Geneva County, Alabama.

5.     Tommy E. Smith is an individual over the age of nineteen (19) who resides in Coffee County, Alabama.

6.     Jeanette K. Parker is an individual over the age of nineteen (19) who resides in Barbour County, Alabama.

7.     Danny L. Snell and Jacqueline P. Draughon are individuals over the age of nineteen (19) who reside in Jackson County, Florida.

8.    Gayle O. Hudson is an individual over the age of nineteen (19) who resides in Polk County, Florida.

9.    Lynda Wirtzfeld is an individual over the age of nineteen (190 who resides in Canyon County, Idaho.

10.    AXA Equitable Life Insurance Company f/k/a Equitable Life Assurance Society of the United States (hereinafter "Equitable Life") is a foreign corporation authorized to do business in the State of Alabama and doing business by agent in Houston County, Alabama, at all times relevant to this Complaint. Equitable Life is a stock life insurance company that is among the largest life insurance companies in the United States. Equitable Life is a wholly owned subsidiary of The Equitable Companies Incorporated.

11.    AXA Distributors, LLC f/k/a Equitable Distributers, LLC., (hereinafter "EDL") is a foreign corporation authorized to do business in the State of Alabama and doing business by agent in Houston County, Alabama, at all times relevant to this Complaint. EDL is a wholly owned subsidiary of Equitable Life and has responsibility for sales and marketing functions for the Certificates issued by Equitable Life. EDL is also the distributor for Equitable Life annuity products, such as the Accumulator$^{sm}$, with its baseBUILDER® and Income Manager® options. EDL is a broker-dealer registered with the Securities and Exchange Commission and is a member of the National Association of Securities Dealers.

12.    FICTITIOUS DEFENDANTS "A". "B", and "C", whether singular or plural, are those persons, firms, corporations, or other entities whose wrongful conduct caused or contributed to cause the injuries and damages to the Plaintiffs; FICTITIOUS DEFENDANTS "D", "E", and "F", whether singular or plural, is the entity which, concerning the occasions made the basis of this suit, was the principal of any of the named or above-described fictitious party Defendants at the time of these occasions;  and FICTITIOUS DEFENDANTS "G", "H", and "I", whether singular or plural, is the entity which is the successor-in-interest of any of the named or above-described fictitious party Defendants.  The wrongdoing of these fictitious parties as set forth herein proximately caused damage to Plaintiffs. Plaintiffs aver that the identities of the FICTITIOUS DEFENDANTS are otherwise unknown to them at this time, their identities as proper parties Defendants are not known to Plaintiffs at this time, and their true names will be substituted by amendment when ascertained.

13.    Plaintiffs aver that the damages of the following Plaintiffs are each less than $75,000, including interest, costs, attorney fees, and any legally legitimate claim of punitive damages:

> Billie S. Rivenbark
> Linda C. Kelly-Sherer
> Gerald Caputo
> Marjorie Caputo
> Ashley Hiatt Wiggins

Tommy Smith
Earl D. Matthews
Doris Matthews

14.    Plaintiffs do not allege any federal claims. Plaintiffs' claims and remedies lies exclusively under Alabama law.

15.    Plaintiffs' claims are joined under Rule 20 of the *Alabama Rules of Civil Procedure*. Joinder is appropriate because Plaintiffs' claims arise out of or relate to two series of transactions and occurrences and present common questions of law and/or fact.

16.    Beginning in 1998, agents of Defendants made representations to Plaintiffs that Plaintiffs could purchase a seven or ten year investment from Defendants which had a guaranteed rate of interest of either 5% or 6%, if held to maturity, but that the return could be greater if the stock market out-performed this minimum guaranteed rate. Defendants represented to Plaintiffs that the 5% or 6% (as the case may be) interest rate would be compounded annually if held to maturity. Defendants represented to Plaintiffs that Plaintiffs would receive "the best of both worlds" since they were guaranteed a 5% or 6% return even if the stock market were to decline.

17.    Plaintiffs made clear that, while the minimum guaranteed rate of return was attractive, they needed access to their monies after maturity and were, therefore, not interested in the annuity aspect of the investment. Defendants

represented to Plaintiffs that there was 90% liquidity on the investment if held to maturity and reassured Plaintiffs that they could take a 90% lump sum pay out of their investment without penalty at the conclusion of the seven or ten year maturity period.

18.    Defendants suppressed and concealed from Plaintiffs that there was no guaranteed interest rate associated with this variable annuity product but instead involved risk, including possible loss of principal; that Plaintiffs could not have complete access to their investment after their seven or ten year liquidity period.

19.    Defendants failed to provide Plaintiffs with a prospectus providing complete, meaningful disclosures of the investment, including its options, risks, fees, expenses, and method of assuring a 90% lump sum pay out without penalty at the close of the maturity period.

20.    In reliance upon the representations of Defendants Plaintiffs transferred monies, including, for some Plaintiffs, monies from IRAs.

21.    After investing their monies with Defendants, Plaintiffs received statements regarding their investments. On numerous occasions, Plaintiffs questioned one or more Defendants regarding their accounts. On each such occasion, Defendants reassured Plaintiffs that the amounts shown on the statements did not accurately reflect the value of their investments.

22.    Plaintiffs have discovered within two years prior to the filing of this

lawsuit that:

      (a)    Plaintiffs were not guaranteed a 5% or 6% (as the case may be) return on their investments;

      (b)    Plaintiffs would not have 90% access to their investments after seven or ten years, or at maturity;

      (c)    Plaintiffs were required to annuitize their entire investment and thus could only receive a portion of their investments.

## COUNT ONE
## FRAUD

23.    Plaintiffs reallege all allegations of this Complaint.

24.    From 1998 through 2000, Defendants, through its/their agents, servants, and employees, made one or more of the following misrepresentations of material fact to Plaintiffs:

      (a)    That Plaintiffs were guaranteed a return on their investment after either seven or ten years of either 5% or a 6% (the guaranteed minimum interest rate);

      (b)    That after seven or tens years (the applicability period to maturity), Plaintiffs would have access to 90% of their investment plus guaranteed interest (at a minimum) and could cash it in for a lump sum payment without penalty if so desired; and

(c)    That this investment provided the "best of both worlds."

25.    The above representations were false, and Defendants knew they were false; or the Defendants recklessly misrepresented the facts without true knowledge thereof; or Defendants misrepresented the facts by mistake but did so with the intention that Plaintiff should rely upon them.

26.    In reliance on those representations, Plaintiffs invested monies with Defendants.

27.    Defendants authorized, ratified, and/or condoned the acts of its employees or agents, including Holman or the acts of Holman and others, were calculated to or did benefit said Defendants.

28.    Plaintiffs aver that Defendants engaged in a fraudulent scheme whereby investors, including the Plaintiffs, were duped into investing in Defendants' variable annuity. Through common misrepresentation, Defendants deceitfully tricked Plaintiffs and others into purchasing annuities. Plaintiffs were prevented from learning about their investments because Defendants purposefully and fraudulently withheld such information and purposefully and fraudulently responded falsely to Plaintiffs' inquiries.

29.    As a proximate consequence of Defendants' fraud and misrepresentations, Plaintiffs were injured and damaged as follows:

(a)    Plaintiffs have paid monies for an investment which was

not what they bargained for;

(b)     Plaintiffs did not earn either the applicable 5% or 6% interest on their investments;

(c)     Plaintiffs cannot cash out their investments after either the seven or ten year period for maturity;

(d)     Plaintiffs' investments have not performed as represented by Defendants;

(e)     Plaintiffs have lost the opportunity to make alternative investments with their funds;

(f)     Plaintiffs have suffered anxiety, worry, mental anguish and emotional distress, inconvenience, embarrassment, humiliation and other incidental damages; and

(g)     Plaintiffs will incur expenses necessitated by the filing of this lawsuit.

30.     Defendants consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to Plaintiffs, thereby entitling Plaintiffs to punitive damages from these Defendants.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, including actual and punitive, in such a sum as a jury shall reasonably assess, in an amount exceeding the jurisdictional minimum of this Court, plus

interest and all costs of this proceeding.

## COUNT TWO
## <u>SUPPRESSION</u>

31.    Plaintiffs reallege all allegations of this Complaint.

32.    At the foresaid times and places, Defendants fraudulently failed to disclose to Plaintiffs and suppressed from the Plaintiffs the following material misrepresentations:

      (a)    That Plaintiffs could lose money on their investment;

      (b)    That Plaintiffs were not guaranteed the applicable rate of return, either 5% or 6%.

      (c)    That Plaintiffs would not have access to 90% of their investments without penalty after seven or ten years, or the applicable rate of interest; and

      (d)    That Plaintiffs should have been provided with a prospectus regarding all aspects of their investments either before or at the time of sale, which document was not provided to Plaintiffs;

33.    Plaintiffs acted as a result of the non-disclosure/suppression and/or fraudulent concealment and purchased the investment product of the Defendants.

34.    As a proximate consequence, Plaintiffs were injured and damaged as set forth above.

35.    Defendants consciously or deliberately engaged in suppression, fraud, wantonness, or malice with regard to Plaintiffs, thereby entitling Plaintiffs to punitive damages from these Defendants.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, including actual and punitive, in such a sum as a jury shall reasonably assess, in an amount exceeding the jurisdictional minimum of this Court, plus interest and all costs of this proceeding.

## COUNT THREE
## NEGLIGENT TRAINING AND SUPERVISION

36.    Plaintiffs reallege all allegations of this Complaint.

37.    Plaintiffs allege that agents, servants, and/or employees of Defendants negligently, wantonly, and/or willfully failed to adequately regulate, audit, supervise and/or monitor the activities of their agents and that Defendants negligently failed to detect and/or deter the misrepresentations of their agents.

38.    Defendants knew of should have known of the misrepresentations of their agents.

39.    Defendants impliedly authorized or ratified the conduct of their agents, and the acts of their agents were calculated to or did benefit Defendants.

40.    As a result of Defendants' actions, the Plaintiffs were injured and damaged as alleged above.

41.   Defendants consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to Plaintiffs, thereby depriving Plaintiffs of legal rights and entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, including actual and punitive, in such a sum as a jury shall reasonably assess, in an amount exceeding the jurisdictional minimum of this Court, plus interest and all costs of this proceeding.

## COUNT FOUR
## BREACH OF CONTRACT

42.   Plaintiffs reallege all previous allegations contained in this Complaint.

43.   Plaintiffs aver that under the terms of their contracts, Plaintiffs were to receive an investment product with a guaranteed return of either 5% of 6% compounded annually after either seven or ten years.

44.   Plaintiffs aver that under the terms of their contracts, Plaintiffs were to have 90% access to a lump sum pay out of their investment, including the 5% or 6% guaranteed return compounded annually, without penalty after seven or ten years.

45.   Plaintiffs allege that Defendants breached their contracts with Plaintiffs in that they did not provide Plaintiffs with the product they bargained for.

46.   As a proximate consequence of Defendants' breach of contract,

Plaintiffs have been damaged as set forth above.

47.     Plaintiffs allege that the contractual duty owed Plaintiffs by Defendants is so related with matters of mental concern or apprehensiveness or with feelings of Plaintiffs, that a breach of that duty reasonably resulted in mental anguish to Plaintiffs and that Plaintiffs are entitled to recover for such mental anguish, physical suffering, annoyance, and inconvenience.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, including actual and punitive, in such a sum as a jury shall reasonably assess, in an amount exceeding the jurisdictional minimum of this Court, plus interest and all costs of this proceeding.

## COUNT FIVE
## CONVERSION

48.     Plaintiffs reallege all allegations of this Complaint.

49.     Plaintiffs aver that Defendants converted monies from Plaintiffs' accounts.

50.     Plaintiffs further aver that such conversion was wanton, willful, and/or malicious.

51.     As a proximate result of the aforementioned wrongful conduct of Defendants, Plaintiffs have been damaged as set forth herein.

52.     Plaintiffs further aver that Defendants are guilty of conduct evincing a

pattern or practice of intentional misconduct, or are guilt of conduct involving actual malice.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, including actual and punitive, in such a sum as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

Respectfully submitted,

One of the Attorneys for Plaintiffs

OF COUNSEL:
Andrew P. Campbell (CAM006)
Caroline Smith Gidiere (SMI209)
CAMPBELL, WALLER & POER, LLC
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
(205) 803-0051 phone
(205) 803-0053 fax
acampbell@cwp-law.com
cgidiere@cwp-law.com

M. Dale Marsh
Marsh Cotter & Tindol LLP
203 E. Lee Street
P. O. Box 310910
Enterprise, AL 36331
(334)347-2626
Fax (334)393-1396
mdm@enterpriselawyers.com

## JURY DEMAND

Plaintiffs hereby request trial by struck jury in this cause of action on all claims so triable.

OF COUNSEL

## PLEASE SERVE THE FOLLOWING DEFENDANTS
## BY CERTIFIED MAIL:

**AXA EQUITABLE LIFE INSURANCE COMPANY**
**f/k/a THE EQUITABLE LIFE ASSURANCE SOCIETY**
**OF THE UNITED STATES**
1290 Avenue of the Americas, 4th Floor
New York, NY 10104


**AXA DISTRIBUTORS, LLC, f/k/a**
**EQUITABLE DISTRIBUTORS, LLC**
1290 Avenue of the Americas, 4th Floor
New York, NY 10104