IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DOUGLAS CHERRY, DR. LANCE ) <br> DYESS, IRA EDMONDSON, JIMMY ) <br> JONES, RACHEL MCKINNEY, LINDA ) <br> MIDDLETON, and VICTOR ) <br> STAFFORD, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> AIG SUN AMERICAL LIFE ) <br> ASSURNACE COMPANY, f/k/a ) <br>  ANCHOR NATIONAL LIFE ) <br> INSURANCE COMPANY, AXA ) <br> EQUITABLE LIFE  INSURANCE ) <br> COMPLANY, f/k/a  THE EQUTIABLE ) <br> LIFE ASSURANCE SOCIETY ) <br> OF THE UNITED STATES, ) <br> AXA DISTRIBUTORS, LLC, f/k/a ) <br> EQUITABLE DISTRIBUTORS, LLC., ) <br> KEMPER INVESTORS LIFE ) <br> INSURANCE COMPANY, ) <br> HARTFORD LIFE INSURANCE ) <br> COMPANY,  and MAXINE ) <br> CHAPPELL, ) <br> ) <br>     Defendants. ) | Civil Action No.:  1:07-CV-923-MEF |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

INTRODUCTION

    Defendants have improperly removed this action to this Court alleging that Maxine Chappell ("Chappell") was fraudulently joined to this action, and therefore, the Court should disregard her citizenship. Defendants contend that Chappell may claim the benefits of res judicata based upon Raymond James & Associates' ("Raymond James") satisfaction of an arbitration judgment against it and in favor of these Plaintiffs.

Defendants make this allegation even though none of the defendants to this action, including Chappell, was a party to the prior arbitration proceeding. Rather, that arbitration proceeding only involved these same plaintiffs and Raymond James.

It is undisputed that Raymond James is not a party to this lawsuit and Plaintiffs seek no further relief from that entity. Because of this lack of mutuality of parties, the doctrine of res judicata cannot be applied to this action, and Chappell has not been fraudulently joined. Additionally, the doctrine of res judicata is not applicable because this action will involve different substantive law and different facts. The prior arbitration proceeding was conducted applying the substantive law of Florida. In this action, Plaintiffs bring claims against all defendants under Alabama common law. Hence, Plaintiffs have different rights and avenues of recovery available to them in this action.

Moreover, part of the core facts that give rise to Plaintiffs' claims against AXA Distributors ("AXA"), only occurred this year well after the arbitration decision was rendered. Chappell's former partner, Ann Hollman, has now filed a lawsuit against AXA alleging that it failed to properly train her regarding the sale of its products. These facts were not presented in the prior arbitration and in no way were part of that panel's decision-making process.

Finally, in order for the Court to rule upon Chappell's res judicata defense, the Court would have to examine in great detail the Restatement Second of Judgments and its general rules and exceptions. This is a complicated inquiry which the Court should not undertake when presented with a motion to remand. Instead, the Court should only satisfy itself that there is a possibility that Chappell might not be entitled to the benefits of res judicata -- i.e., the Plaintiffs have in fact stated a valid claim against her -- and after

2

having done so, enter an order remanding this action to the Circuit Court of Houston County, Alabama.

**STATEMENT OF FACTS**

Plaintiffs hereby provide additional facts to the Court demonstrating that the doctrine of res judicata or issue preclusion is not applicable to this action.

Attached as Exhibit "A" to the Notice of Filing in Support of the Motion to Remand is a "Full statement by Maxine Chappell" that ran in the Dothan Eagle shortly after the arbitration Panel issued its ruling in favor of the Plaintiffs and against Raymond James. It is only slightly ironic that Chappell now embraces the arbitration ruling against Raymond James and seeks to limit her own liability based upon it, because Chappell had previously written in her statement:

> "**I was not named in the claims against Raymond James & Associates and I disagree totally with the findings of the panel. This was not a court of law** and the people who made the claims invested in the markets at the high and took a large percentage of money from the accounts on a monthly basis while the markets were declining, which accelerated their losses. . . . **The variable annuity investments that clients were put in were suitable and had met all state securities requirements as well as NASD requirements**. . . .A review of our files by the NASD found no fault with any of these investments. . . The clients that responded to the ads were clients who invested during this time **with Raymond James through Chappell and (Ann) Holman**."
> (emphasis added)

Other facts that are important in resolving the Motion to Remand include the damage calculations presented to the arbitration panel. Attached as Exhibit "B" to the Notice of Filing in Support of the Motion to Remand is a spreadsheet that was presented to the arbitration panel outlining damages for the Plaintiffs in that proceeding. Under the column "Out-of-Pocket Profit or Loss," there are different amounts depending upon a

3

mixture of the Plaintiffs' funds allocated to bonds. The first total of $595,562 is the amount that the arbitration panel eventually awarded. This amount of damages was based solely upon the amount each Plaintiff actually lost in their accounts, and does not take into consideration the lost opportunity and benefit of the bargain based solely on Chappell's promises. The arbitration award had absolutely nothing to do with the central issue in this litigation – did Chappell and the defendants present their products to the Plaintiffs as providing a guaranteed rate of return.

Attached as Exhibit "C" to the Notice of Filing in Support of the Motion to Remand is a copy of a lawsuit that Holman, among others, filed in the Circuit Court of Houston County. After the arbitration panel issued its award, Ann Holman ("Holman"), Chappell's former partner at Raymond James, along with seventy-two (72) other individuals, filed a lawsuit against AXA alleging that its variable annuity product had been promised to have a guaranteed rate of return of between 5% and 6%. These Plaintiffs have alleged common law fraud and suppression in the first two counts of the complaint. Importantly, count three alleges a negligent failure to train and supervise AXA's agents, presumably including Holman, regarding the terms of the product. This lawsuit was filed after the arbitration panel issued its award and the facts that are alleged in this lawsuit go directly to the claims of the Plaintiffs in this action.

**STANDARD OF REVIEW**

### A. Defendants Bear the Burden of Proving That This Court Has Subject Matter Jurisdiction Over This Action.

When an action is removed from state court, the district court must determine at the outset whether it has original jurisdiction over the plaintiff's claims. *Cabalceta v.*

*Standard Fruit Co.*, 883 F.2d 1553, 1557 (11th Cir. 1989); *Sexton v. Principal Financial Group*, 920 F.Supp. 169 (M.D. Ala. 1996). Removal jurisdiction of this Court must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of cases implicates significant federalism concerns. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109, 61 S.Ct. 868, 872 (1941) (Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.). See also, *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Grace v. Interstate Life & Accident Ins. Co.*, 916 F.Supp. 1185, 1191 (M.D. Ala. 1996).

In determining whether remand is appropriate, this Court must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 551 (11th Cir. 1990); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983); *Grace v. Interstate Life & Accident Ins. Co.*, 916 F.Supp. 1185, 1188 (M.D.Ala. 1996); *Autrey v. United Companies Lending Corp.*, 872 F.Supp. 925, 929 (S.D. Ala. 1995); see *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Eleventh Circuit has recently articulated this standard, which rightfully favors Plaintiff's choice of forum: Defendants' right to remove and Plaintiff's right to choose his forum are not on equal footing . . . [removal statutes are construed narrowly; where plaintiff and Defendant clash about jurisdiction, uncertainties are resolved in favor of remand. *Burns v. Windsor*, 31 F.3d at 1095. See also *Fountain v. Black,* 876 F. Supp. 1294, 1296 (S.D. Ga. 1994) ("Removal jurisdiction is a statutorily-provided basis of federal jurisdiction, 28 U.S.C. §1441, and courts should

strictly construe its requirements and remand all cases in which such jurisdiction is doubtful.").

Moreover, the statutes governing the removal of actions are jurisdictional and are therefore strictly construed in favor of state court jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S.Ct. 868 (1941). See also, *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (questions or doubts regarding jurisdiction are to be resolved in favor of returning the matter to state court); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981); *Grace v. Interstate Life & Accident Ins. Co.*, 916 F.Supp. 1185, 1191, (M.D. Ala. 1996)(removal is a purely statutory right and should be construed strictly in favor of state court jurisdiction); *McLaslin v. Blue Cross and Blue Shield of Alabama*, 779 F.Supp. 1312 (N.D. Ala. 1991); *Naef v. Masonite Corporation*, 1996 U. S. Dist. 923 F.Supp. 1504 (S.D. Ala. 1996).

In order for there to be diversity jurisdiction, this action must involve citizens of different states and the amount in controversy must exceed $75,000.00. See 28 U.S.C. §1332(a)(1). From the face of the pleadings, it is clear that this action was not removable because there is not complete diversity of citizenship among the parties: the Plaintiffs are citizens of Alabama and Chappell, one of the Defendants, is also an Alabama citizen. Defendants maintain that jurisdiction should be retained; however, claiming that Plaintiff fraudulently joined Chappell in an attempt to avoid removal from state court. As shown below, Defendants have failed to meet their heavy burden of showing fraudulent joinder and this case must be remanded.

> **B.**   **Defendants Bear the Heavy Burden of Proving by Clear and Convincing Evidence That Chappell was Fraudulently Joined to This Action.**

6

In *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553 (11th Cir. 1989), the Eleventh Circuit set forth a two-tier test for determining whether joinder has been fraudulent.

> The test for determining whether or not a defendant has been fraudulently joined is two-fold: (1) look to see whether there is no possibility that plaintiff can establish any cause of action against the resident defendant; and (2) look to see whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court.

Id. at 1561. (Emphasis Added). See also, *Sexton v. Principal Financial Group*, 920 F.Supp. 169, 171 (M.D. Ala. 1996)("The joinder is fraudulent if the plaintiff fails to state a cause of action against the resident Defendant and the failure is obvious according to the settled rules of the state."); *Insignia v. LaBella*, 845 F.2d 249, 254 (11th Cir. 1988) (holding that the court must find no possibility that plaintiff could prove his cause of action against Defendant); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983) (holding that "the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the . . . Defendant in state court or that there has been outright fraud in the Plaintiff's pleading of jurisdictional facts")(Emphasis Added); *Grace v. Interstate Life & Acc., Ins. Co.*, 916 F.Supp. 1185, 1188 (there can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged); *Lane v. Champion Int'l Corp.*, 827 F.Supp. 701, 706 (S.D. Ala. 1993); accord, *Bedford v. Connecticut Mut. Life Ins. Co.*, 916 F.Supp. 1211, 1213 (M.D. Ala. 1996); *Harris v. Huffco Petroleum Corp.*, 633 F.Supp. 250, 254 (S.D. Ala. 1986)(J. Hand)(holding that the removing party must show no possibility that plaintiff can establish a cause of action against a resident defendant in state court).

Moreover, in determining whether Defendants have met their burden of persuasion on the issue of fraudulent joinder, the Court must resolve <u>all</u> uncertainties in favor of the Plaintiff:

> The district court <u>must</u> evaluate <u>all factual issues</u> and <u>questions of controlling substantive law in favor of the plaintiff</u>, . . . [and] if there is even a possibility that a state court would find that the complaint states a cause of action against . . . one of the resident Defendants, the federal court <u>must</u> find that the joinder was proper and remand the case to state court.

*Coker*, 709 F.2d at 1440-41 (Emphasis Added); <u>See also</u>, *Cabalceta*, 883 F.2d at 1561 (11th Cir. 1989); *Gauntt V. United Ins. Co. of America*, 853 F.Supp. 1382 (M.D. Ala. 1994); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) ("The burden of persuasion on those who cry 'fraudulent joinder' is indeed a heavy one"); *Grace v. Interstate Life & Accident Ins. Co.*, 916 F.Supp. 1185, 1188 (1996); *Autrey v. United Companies Lending Corp.*, 872 F.Supp. 925, 929 (S.D. Ala. 1995).

### III. ARGUMENT

#### A. <u>This Court May Not Adjudicate the Merits of Plaintiffs' Complaint When Considering Plaintiffs' Motion to Remand</u>

As set forth above, the "heavy" burden is on the Defendants claiming fraudulent joinder to show the allegations of the complaint stated no cause of action against the resident Defendant. The Plaintiff does not have the burden of establishing a colorable cause of action. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1562 (11th Cir. 1989)("The district court apparently placed the burden of establishing a 'colorable' cause of action on Plaintiffs. The burden, however, is on Defendants to show that the allegations of the complaint state no possible cause of action against Defendant Dole").

Essentially, with their improvident removal based upon cries of fraudulent joinder, Defendants are requesting this Court to delve into the merits of Plaintiff's complaint. In fact, Chappell has now filed a motion for summary judgment with this Court. As shown below, however, it is not appropriate for the Court to delve into the merits of Plaintiffs' claims when ruling upon Plaintiff's Motion to Remand. The decision of *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997) is instructive in this regard.

In that action, the plaintiff landowners filed an action in Georgia state court against Crown Petroleum Corporation and an adjoining landowner for damages to plaintiffs' property caused by the escape of gasoline. Crown had owned the adjoining property prior to selling it to the present owner. Defendant removed the action alleging that the adjoining landowner, Daniel Coleman, had been fraudulently joined to defeat diversity jurisdiction. After removal, Defendant submitted a motion for summary judgment claiming that he did not cause plaintiffs' harm. In support of this motion, Coleman submitted his own affidavit which stated that Coleman never caused any release of petroleum products, and the affidavit of a Crown engineer which stated that all underground storage tanks ("USTs@) had been removed from the property prior to Coleman becoming the owner of the land.

The same day that Defendant Coleman filed his motion for summary judgment, plaintiffs filed a Motion to Remand the action to state court. Two weeks later, plaintiffs moved to amend their complaint to state a cause of action for nuisance. Two months later, the district court denied plaintiffs' Motion to Remand; denied plaintiffs' Motion to Amend Complaint as futile; and granted defendant's Motion for Summary Judgment. Id. at 1537-38.

On appeal, the Eleventh Circuit had to determine if the district court erred in its disposition of the motions. First, the court focused on the law of remand, noting that in determining whether the case should have been remanded the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. Id. at 1538. Of course, the district court is to make this determination based upon the plaintiff's pleadings at the time of removal, but the court may also consider affidavits and deposition transcripts submitted by the parties. Id. The court then cautioned, however, that "[w]hile 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment'…<u>the jurisdictional inquiry 'must not subsume substantive determination.</u>'" Id. (Emphasis Added).

The court then added:

> Over and over again, we stress that the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits. . . . When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. . . . **If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident Defendants, the federal court must find that joinder was proper and remand the case to state court.**

Id. at 1538 (Internal Citations Omitted)(Emphasis Added)

The court stated that there are two policy reasons for the strict construction of removal statutes. First, absent fraudulent joinder, plaintiff is master of his or her complaint. Second, and more important, a strict construction of the removal statutes prevents A>exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal, a

result that is costly not just for the plaintiff, but for all the parties and for society when the case must be relitigated." Id. at 1538.

After setting forth this overview of the law of remand, the court stated:

> In terms of this circuit's law, the main point for us is this one: For a plaintiff to present an arguable claim against an in-state Defendant and, therefore, to require a case removed to federal court to be remanded to state court, <u>the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state Defendant</u>. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, <u>there need only be `a reasonable basis for predicting that state law *might* impose liability on the facts involved</u>. . . . Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for summary judgment that come before them.
>
> In the remand context, <u>the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims</u>. Although we have said that district courts may look beyond the face of the complaint, we emphasize that <u>the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent</u>. Applying these principals to this case, we conclude that the district court -- given the record before it -- should have remanded the case to state court and should never have addressed the motion for summary judgment.

Id. at 1542. (Italics in Original) (Other Emphasis Added).

The record before the district court -- that made remand proper -- was comprised of the defendants' affidavits, the Defendant Coleman's answer, and the plaintiffs' verified complaint. As the court noted, Coleman's denial of wrongdoing in his answer did not undercut the fact that plaintiffs had stated an arguable nuisance claim against him, but at most, only showed that there was a controversy that needed to be resolved. Id. at 1541.

11

*Glass Molders Intern. Union v. Wickes Companies*, 707 F.Supp. 174 (D.N.J. 1989) is also instructive regarding a court's duty not to try the merits of a plaintiff's claim in the context of a removal petition. In *Glass Molders*, the employees of a company and the employees' union brought suit against another corporation that attempted a hostile takeover of the employees' employer. Both the employees and the union advanced a tortious interference claim against the corporation. The corporation removed the action, alleging that the union could not state a cause of action against it, and therefore, the union had been fraudulently joined as a plaintiff to defeat diversity.

>In rejecting defendant's argument, the court held:
>
>> Wickes contends that the International has no colorable ground to sue under a tortious interference theory because it cannot show the requisite causal link between Defendant's actions and the union's loss of dues income. We think that to fully pursue this argument, the court would be forced to enter into the legal and factual thicket that comprises the merits of this case. **This is not terrain upon which a court uncertain of its jurisdiction should tread.** *See Green v. Amerada Hess Corp.*, supra, 707 F.2d at 204 (A district court should not conduct a full scale hearing on the merits to determine the existence of fraudulent joinder.)

Id. at 181 (Emphasis Added).

The court in *Glass Molders* further noted that because it could not lay claim to jurisdiction in that case, either under federal question or diversity of citizenship, that it was without competence to proceed to defendant's motion to dismiss: "A federal district concluding lack of jurisdiction should apply its brakes, cease and desist the proceedings, and shun advisory opinions. To do otherwise would be in defiance of its jurisdictional fealty." Id. at 182, *citing, Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 667 (5th Cir. 1971).

In sum, as *Crowe v. Coleman* makes perfectly clear, when faced with a motion to remand the district court must not adjudicate the merits of cases that do not appear readily to be frivolous or fraudulent. Because Plaintiff's claims against Defendant Chappell are not frivolous or fraudulent, and there is a reasonable basis for predicting that state law might impose liability against her based upon the facts involved, this action is due to be remanded.

### C. Chappell May not Avail herself of the Doctrine of Res Judicata.

As shown above in the Statement of Facts, shortly after the arbitration panel ruled against Raymond James, Chappell issued her full statement which highlighted the fact that she "**was not named in the claims against Raymond James**" and further that she "**disagree[s] totally with the findings of the panel.**" (bold added) It seems that Chappell has now had a change of heart and wishes to embrace the findings of the arbitration panel in an attempt to avoid liability in this action. As shown below, Chappell is not entitled to the preclusive effect of res judicata and therefore she has not been fraudulently joined to this action.

#### 1. This action involves the Application of a Different Governing law as well as new facts

In *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316 the United States Supreme Court explained the Doctrine of Res Judicata.

> The effect of a judgment or decree as *res judicata* depends upon whether the second action or suit is upon the same or a different cause of action. If upon the same cause of action, the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit <u>between the same parties or those in privity with them</u>, not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery which might have been presented. <u>But if the second case be upon a different cause of action, the prior judgment or decree operates as an estoppel only as to matters actually in issue or</u>

13

<u>points controverted, upon the determination of which the judgment or decree was rendered</u>. *Cromwell* v. *County of Sac*, 94 U.S. 351, 352-353; *United States* v. *Moser*, 266 U.S. 236, 241. (underline added)

As noted, none of the defendants to this action was a party to the previous arbitration proceeding. "[A] person who is not a party . . . is not bound by or entitled to claim the benefits of an adjudication." Here, Chappell's statement that she was not a party to the arbitration proceeding and that she did not agree with its findings clearly shows an intent not to be associated with that award in any way whatsoever. Now, as part of a litigation strategy, Chappell attempts to embrace the award. If Chappell wanted to be part of that arbitration proceeding, however, she could have filed an answer denying the allegations or she could have moved to intervene into that proceeding. Having failed to do either, this Court should not allow her to now claim issue preclusion.

Moreover, the arbitration clause provided that the law of Florida would govern any dispute between the Plaintiffs and Raymond James. Florida is the state where Raymond James is headquartered and Raymond James chose Florida law. This proceeding, however, involves Alabama common law which is different from Florida law. Accordingly, different remedies are available to the Plaintiffs in this proceeding. Not only is a different governing law at issue in this dispute but also new facts have come to light with the filing of Holman's complaint. That complaint was only filed after the arbitration panel issued its ruling and none of the alleged facts was placed before the panel. On its face, therefore, Chappell's claim that she is entitled to the preclusive effects of res judicata fails.

Likewise, the Restatement Second of Judgments § 27, entitled "Issue Preclusion," provides: "When an issue <u>of fact or law is actually litigated</u> and determined by a valid

judgment, and the <u>determination is essential to the judgment</u>, the determination is conclusive in a subsequent action <u>between the parties</u>, whether on the same or different claim." Here, as noted, the issue whether Plaintiffs were guaranteed between 5% and 6% on the AXA product was not litigated in the arbitration proceeding; this issue also had no bearing on the panel's award which was based solely on out-of-pocket losses associated with the placement of the funds in variable annuities; and, none of the defendants to this action was a party to the arbitration proceeding. Accordingly, issue preclusion fails for all the foregoing reasons.

Comment e. to the Restatement supports this finding. It states:

> e.   *Issues not actually litigated.* A judgment is not conclusive in a subsequent action as to issues which might have been but were not actually litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. . . . And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.

In sum, as there are important differences regarding the applicable law and facts between this action and the earlier arbitration proceeding, the Court should find that issue preclusion does not apply.

### 2.   As a non-party, Chappell has an even higher burden to Carry in order to find Issue Preclusion.

In the Restatement Second of Judgments § 29, entitled "Issue Preclusion in Subsequent Litigation with Others," several factors are listed to consider when determining whether issue preclusion should be found. Comment d to this section

provides: "The differences between the procedures available in the first and second actions, while not sufficient to deny issue preclusion between the same parties, may warrant a refusal to carry over preclusion to an action involving another party." As shown, supra, this action is in a court of law which will apply Alabama law to the dispute. These important factors make issue preclusion inappropriate.

**CONCLUSION**

Defendants have the heavy burden when claiming fraudulent joinder of showing that there is no possibility that Plaintiffs can state a claim against the resident defendant. In making this determination, the Court is required to construe substantive law and facts in favor of the Plaintiff. Applying these principles, it is evident that Chappell cannot carry her burden and that she has not been fraudulently joined to this action. Accordingly, Plaintiffs request that the Court enter an order remanding this action to the Circuit Court of Houston County, Alabama.

Date:   November 8, 2007.

                                                  Respectfully submitted,

                                                  <u>s/ Peter H. Burke</u>
                                                  Peter H. Burke (AST 1995-k74p)
                                                  Richard S. Frankowski (ASB-1734-h70f)
                                                  *Attorneys for Plaintiffs*

<u>OF COUNSEL:</u>
**BURKE HARVEY & FRANKOWSKI, LLC**
One Highland Place
2151 Highland Avenue
Suite 120
Birmingham, AL 35205
Tel: 205-930-9091
Fax: 205-930-9054
pburke@bhflegal.com
rfrankowski@bhflegal.com


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the following listed persons via electronic filing using the Court's PACER system, and by placing a copy of same in the U.S. mail, first class postage prepaid and properly addressed on this the 8th day of November, 2007, as follows:

A. Inge Seldon
John N. Bolus
Andrea Morgan Greene
Maynard Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203-2602
*Attorneys for Defendants AIG Sun America Life Assurance Co., AXA Equitable Life Insurance Co., AXA Distributors, LLC, Kemper Investors Life Insurance Co., and Hartford Life Insurance Co.*

Thomas E. Baddley, Jr.
Baddley & Mauro, LLC
2545 Highland Avenue
Suite 201
Birmingham, AL 35205
*Attorney for Defendant Maxine Chappell*

                                              s/ Peter H. Burke
                                              OF COUNSEL