IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DOUGLAS CHERRY, DR. LANCE DYESS, IRA EDMONDSON, JIMMY JONES, RACHEL MCKINNEY, LINDA MIDDLETON, and VICTOR STAFFORD,  )<br><br>Plaintiffs,  )<br><br>AIG SUN AMERICAL LIFE ASSURNACE COMPANY, f/k/a ANCHOR NATIONAL LIFE INSURANCE COMPANY, AXA EQUITABLE LIFE INSURANCE COMPLANY, f/k/a THE EQUTIABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, AXA DISTRIBUTORS, LLC, f/k/a EQUITABLE DISTRIBUTORS, LLC., KEMPER INVESTORS LIFE INSURANCE COMPANY, HARTFORD LIFE INSURANCE COMPANY, and MAXINE CHAPPELL,  )<br><br>Defendants.  ) | Civil Action No.: 1:07-CV-923-MEF |

### PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO REMAND

In accordance with the Court's Order dated November 16, 2007, Plaintiffs Douglas Cherry, Dr. Lance Dyess, Ira Edmondson, Jimmy Jones, Rachel McKinney, Linda Middleton and Victor Stafford, by and through their undersigned counsel, submit this Reply in Support of their Motion to Remand.

## INTRODUCTION

Defendant Maxine Chappell ("Chappell") and the other defendants have alleged fraudulent joinder of Chappell to this suit. They allege that no claim can be stated against Chappell, because she is entitled to the benefits of res judicata based upon an arbitration Panel's finding of liability against non-party Raymond James & Associates ("Raymond James"). As noted in Plaintiffs' initial pleading: (1) Defendants have the heavy burden of proving fraudulent joinder; (2) all questions of fact and law must be construed in favour of the Plaintiffs; and (3) the Court should not adjudicate the merits of Plaintiffs' claims when deciding this issue. Given these factors, it is evident that this action should be remanded to the Circuit Court of Houston County, Alabama.

Importantly, neither Chappell nor any of the other defendants to this action were parties to that arbitration proceeding. Nonetheless, Chappell and these defendants now claim that Plaintiffs' claims against Raymond James for market loss now encompass their separate and distinct claims against these defendants for fraud. Defendants' attempt to invoke the "one satisfaction" or "one cause of action" rule fails because the claims are against separate entities based on separate facts. Moreover, in order for the Court to make this determination it will have to apply various provisions of the Restatement of Judgments and exceptions thereto.

Moreover, in order for Chappell to claim res judicata, therefore, she must allege that her interests were so aligned with those of Raymond James that she was "virtually represented" at the arbitration and thus entitled to the benefits of the satisfaction of judgment that Raymond James paid in favour of the Plaintiffs. There are constitutional limits on the application of this doctrine, however, and to apply the doctrine in the manner Chappell requests impermissibly crosses those limits. In any event, given that the Court is deciding this issue in the context of a

2

removal, the Court cannot construe all questions of law and fact in favour of the Plaintiffs – as it is required to do – and at the same time, find that Chappell has been fraudulently joined to this action.

## RESTATEMENT OF FACTS

Attached as Exhibit "A" to the Notice of Filing in Support of the Motion to Remand was a "Full statement by Maxine Chappell" that ran in the Dothan Eagle shortly after the arbitration Panel issued its ruling in favor of the Plaintiffs and against Raymond James. Although Chappell now attempts to embrace the arbitration ruling against Raymond James, and thereby, seeks to limit her own liability based upon it, Chappell previously wrote:

> "**I was not named in the claims against Raymond James & Associates and I disagree totally with the findings of the panel. This was not a court of law** and the people who made the claims invested in the markets at the high and took a large percentage of money from the accounts on a monthly basis while the markets were declining, which accelerated their losses. . . . **The variable annuity investments that clients were put in were suitable and had met all state securities requirements as well as NASD requirements**. . . .A review of our files by the NASD found no fault with any of these investments. . . The clients that responded to the ads were clients who invested during this time **with Raymond James through Chappell and (Ann) Holman**." (emphasis added)

Some of the important factual differences between the previous arbitration proceeding and the claims asserted herein include:

1. The arbitration was the result of a contract between the parties to attempt to settle the dispute in a private, equitable forum that was not required to apply any law;

2. At Claimants' closing, Claimants' did not request damages for fraud for the guaranteed rates of return made by Maxine Chappell;

3. Since the conclusion of the arbitration hearing at issue, Maxine Chappell's partner, Ann Holman, has filed a lawsuit against AXA Equitable, arguing that AXA Equitable misrepresented the annuity product to her. Holman has convinced many of her clients to join her lawsuit against AXA Equitable.

3

    4.    At the time of the arbitration, some Claimants still owned their annuities. Because the guaranteed rates of return were not payable until the annuity was sold or reached its required contingent deferred sales charge period, the issue of damages for the fraud and misrepresentation was not ripe for prosecution.

## RETATEMENT OF STANDARD OF REVIEW

Because a Plaintiffs' choice of forum is subject to deference, Plaintiffs restate the appropriate standard of review for the Court to apply. In *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553 (11th Cir. 1989), the Eleventh Circuit set forth a two-tier test for determining whether joinder has been fraudulent.

> The test for determining whether or not a defendant has been fraudulently joined is two-fold: (1) look to see whether there is no possibility that plaintiff can establish any cause of action against the resident defendant; and (2) look to see whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court.

Id. at 1561. (Emphasis Added). See also, *Sexton v. Principal Financial Group*, 920 F.Supp. 169, 171 (M.D. Ala. 1996)("The joinder is fraudulent if the plaintiff fails to state a cause of action against the resident Defendant and the failure is obvious according to the settled rules of the state."); *Insignia v. LaBella*, 845 F.2d 249, 254 (11th Cir. 1988) (holding that the court must find no possibility that plaintiff could prove his cause of action against Defendant)

Moreover, in determining whether Defendants have met their burden of persuasion on the issue of fraudulent joinder, the Court must resolve all uncertainties in favor of the Plaintiff:

> The district court must evaluate all factual issues and questions of controlling substantive law in favor of the plaintiff, . . . [and] if there is even a possibility that a state court would find that the complaint states a cause of action against . . . one of the resident Defendants, the federal court must find that the joinder was proper and remand the case to state court.

*Coker*, 709 F.2d at 1440-41 (Emphasis Added)

In *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997), after setting forth an overview of the law of remand, the Eleventh Circuit stated:

4

> In terms of this circuit's law, the main point for us is this one: For a plaintiff to present an arguable claim against an in-state Defendant and, therefore, to require a case removed to federal court to be remanded to state court, <u>the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state Defendant</u>. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, <u>there need only be `a reasonable basis for predicting that state law *might* impose liability on the facts involved</u>. . . . Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for summary judgment that come before them.
>
> In the remand context, <u>the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims</u>. Although we have said that district courts may look beyond the face of the complaint, we emphasize that <u>the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent</u>. Applying these principals to this case, we conclude that the district court -- given the record before it -- should have remanded the case to state court and should never have addressed the motion for summary judgment.

<u>Id.</u> at 1542. (Italics in Original) (Other Emphasis Added).

## ARGUMENT

### A. The One Cause of Action Rule Does not Apply Because the Claims in this case are Based upon Different Facts and Are against Different Entities than those Asserted in the Arbitration Proceedings

Defendants contend that Plaintiffs' claims against Chappell are barred by the "one satisfaction" or "one cause of action" rule. They argue that any alleged claim against Chappell could have or should have been asserted in the arbitration proceeding and that it is now precluded from being litigated in a later suit. (Defendants' Memorandum at p. 2-4; <u>citing</u> *Wilbourn v. Ray*, 603 So.2d 969, 972 (Ala. 1992) (if a plaintiff recovers judgment against one joint defendant and obtains satisfaction of that judgment, this operates as a discharge of the other defendant).

5

While defendants have stated the general rule regarding splitting of claims, they have failed to cite the exceptions to that general rule. Restatement 2d of Judgments, § 26 provides exceptions to the general rule concerning splitting of claims and states:

> (1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
> (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or
>
> (c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief; or
>
> (e) For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course...

It is conceivable that one or all three of the foregoing exceptions apply to this action. First, Raymond James knew that Chappell was not named as a party to the arbitration but neither it nor she took any affirmative steps to join the proceeding. Second, because of a choice of law provision in the parties contracts, Florida law was applied to the arbitration proceeding. Here, Plaintiffs are invoking Alabama state law in their claims against the defendants. Third, Chappell's promise of a guaranteed rate of return of 5% or 6% for the life of the annuity constitutes a recurring wrong to the Plaintiffs. Contrary to defendants' assertions, it is evident that the application of these exceptions to the facts of this case will require the Court to delve into the merits of Plaintiffs' claims.

In *Saad Construction Company, Inc. v. DPF Architects, P.C. et. al.*, 851So.2d 507 (Ala 2002), the Alabama Supreme Court discussed at length whether an arbitration proceeding

6

between Saad Construction and the Baldwin County Board of Education, which was held before the Director of the Alabama Building Commission, would have preclusive effect in favor of certain non-parties who were not participants to that arbitration. The trial court granted summary judgment in favor of several non-parties applying the doctrine of res judicata. In deciding the appeal, the Court discussed the doctrines of res judicata, collateral estoppel, satisfaction of judgments, and various exceptions thereto. It explained:

> When deciding whether an arbitrator's award is res judicata as to a subsequent claim, we must also consider whether the claim was within the scope of the submission to the arbitrator. *Old Republic,* 790 So. 2d at 929; *Restatement (Second) of Judgments,* § 26(1)(c); *Restatement (Second) of Judgments,* § 84, *comment d.* ("A preliminary question in giving res judicata effect to an arbitration award is whether the claim or issue was within the scope of the reference to arbitration.") Because an arbitrator's jurisdiction is limited to the scope of the submission, claims not within the scope of the submission are not barred by the doctrine of res judicata in a subsequent action. *Old Republic,* 790 So. 2d at 929-30; *Restatement (Second) of Judgments,* § 26(1)(c).

851 So.2d at 517.

The Court continued:

> Moreover, the appellees offered no evidence indicating that Saad Construction could have asserted in the arbitration the claims it now asserts against them. The Board and Saad Construction were the only signatories to the contract containing the arbitration provision, and the Board and Saad Construction were the only parties that actually participated in the arbitration. The arbitration provision explicitly stated that the director's decision "shall be final, binding and conclusive *on the parties to the contract.*"

851 So.2d at 519. (Italics in original.)

Importantly, the Court noted that there was "no evidence in the record indicating that DPF, Turberville, Mueller, Capes, Capes Engineering, Yonge & Associates, or Kerr sought to join the arbitration or that they were even willing to participate in the arbitration of Saad Construction's claims against them." 851 So.2d at 519. Here, we know that Chappell has not

7

only disavowed the rulings of the arbitration panel but also highlighted the fact she was not a party to that proceeding. ("I was not named in the claims against Raymond James & Associates and I disagree totally with the findings of the panel. This was not a court of law. . .") Moreover, none of the other defendants to this action moved to intervene to be part of the arbitration proceeding.

The court further explained that in order to satisfy the doctrine of collateral estoppels, one must show that the issue was actually litigated. It stated:

> The appellees have not satisfied their burdens of proof as to their affirmative defense of collateral estoppel. As previously noted, one who claims the defense of collateral estoppel must prove, among other things, that the issue was "actually decided," *Leverette, 479 So. 2d at 1237*, and "that resolution of the issue was necessary to the prior judgment," *Biles, 793 So. 2d at 712*. Moreover, because we are reviewing a summary judgment, we "must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant." *Hobson, supra, 690 So. 2d at 344*. <u>The director did not explain the rationale for his arbitration decisions, and he made no specific findings of fact. Instead, he merely entered the words "Award" or "No Award"</u> next to each of the claims made by Saad Construction and the Board.

851 So.2d at 520-521. (Underline added.)

Likewise, in the arbitration between the plaintiffs and Raymond James, the panel found Raymond James guilty of misconduct but did not issue any specific findings of fact. Hence, from the record before this Court, it cannot be determined whether the main issue in this litigation -- whether Chappell sold these products promising a guaranteed rate of return of between 5% and 6% -- was actually decided in that arbitration proceeding. Because some of the facts relevant to Plaintiffs' claims in this action did not even occur until after the panel issued its ruling, i.e., the filing of Ann Holman's lawsuit, Plaintiffs contend that the issue was not actually decided. See *State v. Plantation Pipe Line Co.*, 265 Ala. 69 ("The general rule that a judgment on one cause of action is not conclusive in a subsequent action based upon a different cause of

8

action as to questions of fact which might have been but were not litigated and determined in the prior action." (see Am.Law.Inst. Restatement, Judgments § 68, Comment D").

The case of *Little v. Pizza Wagon, Inc.*, 432 So. 2d 1269 (Ala. 1983), cited in *Saad Construction*, shows that the granting of summary judgment with further development of the factual record would be improper. In that case, the Plaintiff, Alfred E. Little, initiated state court proceedings on December 26, 1979, against defendants Pizza Wagon, Inc., Jad A. Wolf (as surety for Pizza Wagon, Inc.), and Thomas A. Adams, Jr. The Plaintiff's complaint was premised upon defendants' alleged breach of a written leasehold agreement by their: (1) failure to maintain the leased premises; (2) improper transfer and/or assignment of the leased premises; (3) abandonment of the leased premises; and (4) failure to pay rent pursuant to the terms of the lease. Id. at 1268.

On March 10, 1980, defendant Adams filed a motion to dismiss or, in the alternative, to abate the action as to him, alleging that there was presently pending in the federal district court a civil action filed by him against Little, which suit arose out of the same transaction which is the subject of this lawsuit. Thereafter, defendants Pizza Wagon and Wolf filed a motion for summary judgment, supported by copies of Little's federal court pleadings, as well as supporting briefs. Defendants' motion for summary judgment was predicated upon grounds that Little was estopped from offering different facts in the state court proceedings from those submitted in the federal cause of action in which, despite a favorable verdict for Adams, neither Adams nor Little was awarded damages. The trial court granted summary judgment in favor of the defendants and the Alabama Supreme Court on appeal reversed and remanded.

The court explained its ruling:

> There are any number of factual issues outstanding. As Little points out, he swore, in opposition to the defendants' motion for summary judgment, that the federal

action did not involve and did not decide whether Pizza Wagon and Jad A. Wolf, the original signatories to the lease, owed him money. The movants for summary judgment did not carry their burden. In fact, it was supported by an affidavit of the attorney who was one of the lawyers representing Adams in the federal litigation. He said only that the jury found that Adams owed Little no further obligation under the terms of the lease assigned to him. There has been no determination of whether Pizza Wagon and Wolf owe Little under the lease. Clearly, the trial court erred in granting summary judgment in their favor. 432 So. 2d at 1271.

In sum, Defendant's removal claiming fraudulent joinder presents factual issues that the Court would need to rule upon in order to resolve the issue of res judicata. In addition, the Court would be required to apply different sections of the Restatement of Judgments and exceptions thereto. For these reasons, the Court should find that the removal was improper and remand this action.

    B. <u>To Apply the Doctrine of Virtual Representation in the Manner that Chappell and the Defendants Request, Impermissibly Intrudes upon Important Constitutional Limits of Due Process</u>

Chappell urges the Court to apply the doctrine of "virtual representation," claiming that because she was an agent of Raymond James that her interests were adequately protected during the arbitration. She makes this claim even though a judgment was rendered against Raymond James. If Raymond James had not satisfied that judgment, and Plaintiffs were allowed to seek payment of that judgment from Chappell individually under this virtual representation concept, one has to wonder whether she would still think her interests were adequately protected. In any event, as shown below, there are important limits on this doctrine of virtual representation.

A leading treatise has explained that application of the doctrine of virtual representation has important limitations. It states:

> Some decisions and commentaries have begun to develop a theory of nonparty preclusion that is often identified as "virtual representation." The broadest form of this theory would preclude relitigation of any issue that had once been adequately tried by a person sharing a substantial identity of interest with a nonparty.

> Justification for this result is found in the general theory of representation. Adoption of the theory in this form could expand nonparty preclusion far beyond current practice. If one of fifty persons injured in a bus accident should lose an action against the bus company, for example, all of the other passengers could be bound by any adverse findings. Actual use of virtual representation theory has not yet begun to approach such expansive consequences, and it does not seem either desirable or likely that it will carry so far.
>
> A narrow role may remain for virtual representation, so long as adequate litigation remains the central requirement. Some cases may present substantial elements of several different grounds of nonparty preclusion, without clearly justifying application of any one ground. Careful application of the virtual representation label may provide a convenient means of aggregating these separate elements in special circumstances that make relitigation especially unattractive. . . . Close nonlitigating relationships with a party, participation, apparent acquiescence, and perhaps deliberate maneuvering to avoid the effects of the first action are among the factors to be weighed.

18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4457 (1981). See *Richards v. Jefferson County*, 517 U.S. 793, 804-05, 135 L. Ed. 2d 76, 116 S. Ct. 1761 (1996) ("An extreme application of state-law res judicata principles violates the Federal Constitution. ... A state court's freedom to rely on prior precedent in rejecting a litigant's claims does not afford it similar freedom to bind a litigant to a prior judgment to which he was not a party."); see also, *Thomas v. Lynn*, 620 So. 2d 615 (Ala. 1993) (The doctrine of *res judicata* (or its allied doctrine of estoppel by judgment) was incorrectly applied by the trial court to bar the Thomases' claims against Forsythe, Carmichael, and Radford; therefore, that portion of the judgment dismissing the Thomases' complaint against Forsythe Farm and Realty, Inc.; Dorothy Carmichael; and Sherry Radford, is reversed; and the cause is remanded for proceedings consistent with this Court's opinion.

Moreover, Restatement 2d of Judgments, § 51 governs persons having a relationship in which one is vicariously responsible for the conduct of the other. It states:

11

(1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless:

(a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or

(b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.

(2) A judgment in favor of the injured person is conclusive upon him as to the amount of his damages, unless:

(a) There were limitations on the competence of the forum in the first action preventing him from obtaining the full measure of his damages, as stated in § 26(1)(c), or he exercised the option stated in § 26(1)(e) to divide his claim; or

(b) Different rules govern the measure of damages in the two actions.

As previously noted in the motion to remand, Ann Holman's lawsuit was not filed until after the arbitration panel ruled. Holman now sues several of the defendants to this action for misrepresenting the terms of their financial products and for not adequately training its agents. Additionally, as some of the claimants had not sold their annuities their claims for a guaranteed rate of return were not yet ripe as the full amount of damages had not yet accrued. These facts fall within the exception provided above.

Defendantas' reliance upon *Tortorich v. Musso*, 2007 U.S. Dist. Lexis 81021 (E.D.La. Nov. 1, 2007) is not persuasive as the procedural posture of that action is completely different than the posture presented to this Court. In that action, the plaintiffs instituted an arbitration proceeding against two brokers and the arbitration panel ruled in favor of the brokers on grounds of res judicata. When reviewing that determination, however, the Federal District Court was required to apply a highly deferential standard of review. As stated in that opinion, courts "apply a highly deferential standard when reviewing arbitration awards." <u>Citing</u> *Antwine v. Prud. Bache Sec., Inc., 899 F.2d 410, 413 (5th Cir. 1990)* ("Judicial review of an arbitration award is

extremely narrow and this Court should defer to the arbitrator's decision when possible.") Id. at 7-9.

Here, by contrast, the standard of review is highly deferential to the Plaintiffs because this action was removed to this Court on the grounds of fraudulent joinder. As *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997) instructs, "the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent." Id. at 1542.

Plaintiffs have argued in their initial papers with the Court, that in order to rule upon Chappell's claim of res judicata that the Court would be required to delve into the merits of Plaintiffs' claims. Interestingly, the court in *Tortorich v. Musso* recognizes that "in an arbitration, *e.g.*, claim preclusion or res judicata, is part of the merits of an arbitration dispute." (Underline added) See *Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1132 (9th Cir. 2000)* ("[A] res judicata objection based on a prior arbitration proceeding is a legal defense that, in turn, is a component of the dispute on the merits and must be considered by the arbitrator, not the court."). 2007 U.S. Dist. Lexis 81021 (E.D.La. Nov. 1, 2007) at 11.

If the Court were somehow to find that the prior ruling did in fact embrace non-party Chappell and she is entitled to the benefits of res judicata, are the other defendants to this action -- who also were non-parties to that arbitration proceeding – also bound by the findings of that prior ruling? Would the Plaintiffs to this action then be able to use the finding against Chappell as collateral estoppel against the other defendants to this action? These are just some of the issues that Chappell's motion raises.

13

## CONCLUSION

Defendants have the heavy burden when claiming fraudulent joinder of showing that there is no possibility that Plaintiffs can state a claim against the resident defendant. In making this determination, the Court is required to construe substantive law and facts in favor of the Plaintiff. Applying these principles, it is evident that Chappell cannot carry her burden and that she has not been fraudulently joined to this action. Accordingly, Plaintiffs request that the Court enter an order remanding this action to the Circuit Court of Houston County, Alabama.

Date: December 12, 2007.

Respectfully submitted,

s/ Peter H. Burke
Peter H. Burke (AST 1995-k74p)
Richard S. Frankowski (ASB-1734-h70f)
*Attorneys for Plaintiffs*

**OF COUNSEL:**
**BURKE HARVEY & FRANKOWSKI, LLC**
One Highland Place
2151 Highland Avenue
Suite 120
Birmingham, AL 35205
Tel: 205-930-9091
Fax: 205-930-9054
pburke@bhflegal.com
rfrankowski@bhflegal.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon the following listed persons via electronic filing using the Court's PACER system, and by placing a copy of same in the U.S. mail, first class postage prepaid and properly addressed on this the 12th day of December, 2007, as follows:

A. Inge Seldon
John N. Bolus
Andrea Morgan Greene
Maynard Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203-2602
***Attorneys for Defendants AIG Sun America Life Assurance Co., AXA Equitable Life Insurance Co., AXA Distributors, LLC, Kemper Investors Life Insurance Co., and Hartford Life Insurance Co.***

Thomas E. Baddley, Jr.
Baddley & Mauro, LLC
2545 Highland Avenue
Suite 201
Birmingham, AL 35205
***Attorney for Defendant Maxine Chappell***

                                              s/ Peter H. Burke
                                              OF COUNSEL